# UNITED STATES COURT OF APPEALS
## SIXTH CIRCUIT

ROSA MARIA PENA GARCIA,

Petitioner/Plaintiff,

v.

U.S. DEPARTMENT OF
HOMELAND SECURITY, KRISTI
NOEM, in her official capacity as head
of that department, U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT, TODD LYONS, in
his official capacity as head of that
agency, and ROBERT LYNCH, in his
official capacity as director of the
Detroit Field Office,

Respondents/Defendants.

Appeal no.: 25-1632

Case no.: 2:25-cv-12023

Hon. Susan K. DeClercq
District Court Judge

---

### PLAINTIFF ROSA PENA GARCIA'S
### EMERGENCY MOTION FOR STAY OF
### REMOVAL

Petitioner/Plaintiff, Rosa Maria PENA GARCIA (hereinafter referred to simply as "Plaintiff"), by and through attorneys at AYAD LAW, PLLC, respectfully states as follows:

### FACTS, LAW, AND ARGUMENT

Plaintiff is an alien due to be "removed" from the United States on July 18, 2025. Plaintiff filed an action in the District Court for the Eastern District of Michigan challenging the removal on the basis that her Board of Immigration

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Appeals final order allowed for her to **voluntarily depart** and explaining that if she is removed (as opposed to voluntarily departs) she is barred under the law from returning to the United States where her husband (who has cancer) and son (who is in university) are, for ten years. Whereas, if she is properly allowed to voluntarily depart, *per* her BIA order, then her son will be able to apply for a *visa* for her to return to the United States when he turns 21 in October of this year.

Plaintiff requested a stay of that removal in the District Court for the Eastern District of Michigan, that request was denied today. See **Exhibit A, July 16, 2025 Opinion and Order Denying Plaintiff's Emergency Motion for Preliminary Injunction or Stay of Removal**. (Attached to this brief pursuant to Fed. R. App. P. 27(a)(2)(B)(iii).)

No additional motion for a stay of the District Court order, pending this appeal, has been made in the District Court, where it would be impractical as the issue being appealed is the very denial of stay issued by the district court.

The District Court and Plaintiff agree that the standard to be used for determining an injunction in this matter consists of a weighing of the four traditional equitable factors of 1) likelihood of success on the merits, 2) irreparability of harm, 3) harm to non-movant, and 4) public interest. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

In its opinion and order, the District Court made the following pertinent rulings/findings:

**2** | P a g e

### 1) Likelihood of success on the merits.

Plaintiff "is unlikely to succeed under any of [her] theories, mostly because this Court lacks jurisdiction to review claims relating to an order of removal." **Exhibit B, p. 6**. Specifically, the District Court found that the REAL ID Act of 2005 (8 USC § 1252, *et seq*.) holds that "no court shall have jurisdiction to review" any "claim arising from or relating to the implementation or operation of an order of removal." And that the "exclusive means of review" of an order of removal is by petition for review with "an appropriate court of appeals."

Plaintiff disagrees because the district court has *mandamus* jurisdiction here. A district court has authority under the Mandamus Act to "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff." 28 USC § 1361. Admittedly, *mandamus* is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotation marks and citation omitted). However, immigration cases are often one of those causes. See *Omar v. Blinken*, 756 F. Supp. 3d 520, 526 (S.D. Ohio 2024) and cases like it. ["Plaintiffs contend that Defendants, in their management of the government agencies responsible for issuing visas, have unreasonably delayed in adjudicating the visa application for Seif to enter the United States."] Because the writ of *mandamus* "is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *Cheney v. U.S. Dist. Ct. for the*

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

*Dist. of Columbia*, 542 U.S. 367, 380, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal quotation marks and citations omitted).

First, a petitioner must "have no other adequate means to attain the relief [it] desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id*. at 380−81, 124 S.Ct. 2576 (citation omitted). That is exactly the case here, where Plaintiff is without recourse in the Board of Immigration Appeals because it was more than 90 days from the date of her March 27, 2023 final order from the BIA [**Exhibit B**] when Defendants violated it. "The time limits for filing… a motion to reopen [is] 'crystal clear…' A motion to… reopen must be filed 'within 90 days of the date of entry of a final administrative order of removal,' 8 U.S.C. § 1229a(c)(7)(C)(i). *** This time limitation is enforced strictly…" *Gor v. Holder*, 607 F.3d 180, 184-5 (6th Cir. 2010). So, Plaintiff is without administrative relief. And Plaintiff cannot seek judicial review in the Sixth Circuit, because the statute giving the Sixth Circuit jurisdiction has an even shorter time limit than that of the BIA. "…8 U.S.C. § 1252(b)(1), states that '[t]he petition for review must be filed not later than 30 days after the date of the final order of removal.' That statutory time limit is 'both mandatory and jurisdictional.' " *Prekaj v. I.N.S.*, 384 F.3d 265, 267 (6th Cir. 2004). Therefore, Plaintiff meets the first prong of the *mandamus* test.

Second, a petitioner must show a "clear and indisputable" right to the relief sought. *Id*. at 381, 124 S.Ct. 2576 (citation omitted). Here, the BIA conferred upon

Plaintiff the right of voluntary departure in language that could not be more clear. The BIA's order states: "within 60 days from the date of this order ***or any extension beyond that time as may be granted by DHS***." See **R. 1-4, March 27, 2023 BIA Order of Voluntary Departure**. Here, the DHS granted Plaintiff an extension until September 12, 2025 and so Plaintiff has a right to voluntary departure until that time. **R. 1-6, July 26, 2023 Order of Supervision, page 2**. Therefore, Plaintiff meets the second prong of the *mandamus* test.

Finally, a petitioner must show that issuing the writ is otherwise "appropriate under the circumstances." *Id.*; see also *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 525–26 (6th Cir. 2022).and *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 437 (6th Cir. 2009). Here, the facts are uncomplicated and the requested *mandamus* is benign. The request is to let Plaintiff voluntarily depart the United States so that she does not suffer harsh and undue consequences for the next decade. She has been completely compliant and, had Defendants informed her beforehand of their intention to charge her with failing to voluntarily depart, she would have booked a flight immediately and departed. The *mandamus* relief requested is more than appropriate under the circumstances. Therefore, Plaintiff meets all prongs of the *mandamus* test and the district court had jurisdiction under the Mandamus Act.

The District Court also had jurisdiction pursuant to its power to grant *habeas* relief.

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

> The Supreme Court has [] recently recognized the continued viability of the writ in cases involving the detention of noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *Demore v. Kim*, 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

*Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 675 (E.D. Mich. 2020).

Whether or not Plaintiff is being physically detained at this time does not bar her from seeking *habeas* relief. Plaintiff is currently considered 'in custody' under the law and so entitled to relief. Under 28 U.S.C.A. § 2241, the writ of *habeas* corpus extends to individuals who are "in custody" under the authority of the United States, including those challenging the legality of their detention or removal orders. Courts have interpreted "in custody" broadly in the immigration context to include situations where an alien is subject to a final order of removal, even if not physically detained by immigration authorities. For example, in *Lemeshko v. Wrona*, 325 F.Supp.2d 778 (2004), the court held that an alien subject to a final removal order is "in custody" for *habeas* purposes, even if not physically detained, as long as the alien is challenging the grounds of the removal order. Similarly, in *Agarwal v. Lynch*, 610 F.Supp.3d 990 (2022), the court found that a noncitizen was "in custody" at the time of filing a *habeas* petition challenging an expedited removal order, as the removal order imposed adverse collateral consequences, such as inadmissibility to the United States for five years.

Plaintiff is entitled to *habeas* relief from Defendants' custody of her because said custody contradicts the final order of the BIA, exceeds its lawful authority under

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

the INA, and therefore violates the Fifth Amendment due process clause. Wherefore, the Court should grant Plaintiff a writ of *habeas corpus*.

Lastly, the District Court had jurisdiction under its general authority.

Plaintiffs allege federal question jurisdiction under 28 U.S.C. § 1331. [] Although the Mandamus Act and APA cannot themselves confer subject matter jurisdiction, the Court has jurisdiction over Plaintiffs' claims through § 1331.

*Omar v. Blinken*, 756 F. Supp. 3d 520, 529 (S.D. Ohio 2024) (in which the plaintiffs were non-citizen visa applicants).

Additionally, District Court ruled that success on the merits was unlikely because:

[Plaintiff] makes much of the fact that the BIA decision granting voluntary departure included the following language:

The respondent is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or ***any extension*** beyond that time as may be granted by DHS.

… Under [Plaintiff's] reading, the stay of removal in July 2023 not only stayed her removal but also extended her *voluntary departure*. . . On its own, this argument could have some merit. However, [Plaintiff] stretches it even further, arguing that the Department of Homeland Security, through ICE, granted *more* extensions by simply scheduling check-in dates while an order of removal was in place. . . [T]his Court is unaware of any statute or case supporting [Plaintiff's] theory that the grant of voluntary departure remains in effect under the circumstances.

**Exhibit B**, p. 7-8 (italics in original, bold, underline added).

Plaintiff strongly disagrees with this ruling. The plain language of the order clearly says that any extension granted by DHS (which includes ICE) operates to

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

extend her voluntary departure date. Had the BIA wanted to specify that only specific stays counted, it would have done so, and would certainly not have used the qualifier "***any***" before the word "extensions." So the District Court's ruling that no statute or caselaw provided for this plain-language interpretation is erroneous. "Where the language is plain, our sole function . . . is to enforce it according to its terms." *United States v Grant*, 636 F3d 803 (CA 6, 2011) (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004).

Further, it was not just Plaintiff and her current and prior counsel who interpreted the orders of supervision and work authorizations as extensions, it was the government, as is obvious by the fact that **the first time it gave Plaintiff notice that she had violated her voluntary departure order and was now subject to the alternate order of removal was on May 20, 2025**. See **R. 1-8, Notice of Cancellation of Bond** and **R 1-9, Notice of Breach of Bond**.

Therefore, the District Court erred when it found that this factor did not favor Plaintiff, and this Honorable Court should issue the Stay of Removal pending resolution of this matter.

### 2) Irreparability of harm.

The District Court ruled that Plaintiff failed to demonstrate irreparable harm because "the burden of removal alone cannot constitute the requisite irreparable injury." Citing *Nken v Holder*, 556 U.S. 418, 435 (2009).

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Plaintiff disputes this for two reasons. First, the caselaw cited by the District Court says "removal **alone**" but there are many situations where, as here, it is not the removal alone that will constitute harm. Plaintiff attached to its motion in the District Court her husband's medical records, and—as the District Court acknowledged in its order—: "[Plaintiff] is now facing removal and a ten-year bar from return, meaning she would be separated from her U.S. citizen son and her seriously ill husband." **Exhibit A**, p. 1. That is, Plaintiff takes care of her husband, who has cancer, and his medical treatment is here. Plaintiff's husband is on medical deferment from removal for his cancer treatment which he receives here in the United States. So, if Plaintiff leaves, she will not be able to visit her ill husband for 10 years, if he lives that long. See **Exhibit B, Affidavit of Plaintiff**. That is the risk of irreparable harm necessary to grant the stay which was denied.

Further, after the Supreme Court holding that the District Court relies on, this Honorable Court has granted many stays of removal pending adjudication of appeals of Board of Immigration Appeals orders.

*Morris v Bondi*, ___F App'x___; 2025 U.S. App. LEXIS 7774 (CA 6, Apr. 2, 2025); *Demjanjuk v Holder*, 563 F3d 565 (CA 6, 2009); *Antonio v Garland*, 38 F.4th 524 (CA 6, 2022); *Petrauskas v Garland*, ___F App'x___; 2021 U.S. App. LEXIS 26907 (CA 6, Sep. 7, 2021); *Cardona-Sanchez v Garland*, ___F App'x___; 2024 U.S. App. LEXIS 12913 (CA 6, May 29, 2024); and *Perez-Perez v Bondi*, ___F App'x___; 2025 U.S. App. LEXIS 7056, at *3-5 (CA 6, Mar. 26, 2025).

AYAD LAW, P.L.L.C.
645 Griswald St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

Therefore, the District Court erred when it found that this factor did not favor Plaintiff, and this Honorable Court should issue the Stay of Removal pending resolution of this matter.

**3) Balance of hardships and public interest.**

Here, the District Court combined the analysis of the two factors of the balance of hardships and public interest, and concluded that: "[I]t is difficult to understand how it is in the public interest for valuable members of society who contribute to the care and wellbeing of others to be removed." The District Court did not address the risk of harm to the government, for which there is virtually none. The government also did not put forward any harm that would be done to it by the stay in its response brief. See **R. 5, Government's Brief in District Court, p. 17**.

Therefore, the District Court erred when it found that this factor did not favor Plaintiff, and this Honorable Court should issue the Stay of Removal pending resolution of this matter.

**4) As to the timing of Plaintiff's emergency motion in the lower court.**

So that it does not become any grounds for denial of relief in this Honorable Court, Plaintiff wants to make clear that her initial request for a stay was made in the District Court on July 3, 2025 when her petition for writ of *habeas* and *mandamus* relief was filed as a separate brief from her combined complaint and petition. On July 14, 2025, Plaintiff called the District Court to inquire as to when a decision on the requested stay could be expected. The District Court clerk explained

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

that because all prior filings had been attached to a complaint, no one had reviewed them yet. Plaintiff immediately filed a separate emergency motion with identical facts and arguments as those contained in the complaint and petition requesting a stay. Therefore, Plaintiff was in no way dilatory.

## RELIEF REQUESTED

WHEREFORE, Plaintiff seeks the protection of this Honorable Court and respectfully requests that the Court issue an Order granting a Stay of Removal during its consideration of the filed complaint due to the fact that Petitioner's removal from the United States is imminent.

Plaintiff respectfully requests that this Court:

a) Grant Plaintiff's motion for an emergency stay;

b) Issue a stay preventing Plaintiff from being deported while her action is pending in this court; and

c) Grant all other relief that this Court deems just and equitable.

Respectfully submitted,

Ayad Law, PLLC

/s/Nabih H. Ayad (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
P: 313.983.4600 | F: 313.983.4665
filing@ayadlawpllc.com

Dated: July 16, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on this date I filed the foregoing paper and any attachments with the Clerk of Courts *via* the CM/ECF Electronic filing System giving notice to all parties of record, and separately sent it to:

Zak Toomey (MO61618)
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9617
zak.toomey@usdoj.gov

Respectfully submitted,

AYAD LAW, PLLC

*/s/Nabih H. Ayad* (P59518)
645 Griswold St., Ste. 2202
Detroit, MI 48226
P: 313.983.4600 | F: 313.983.4665
filing@ayadlawpllc

Dated: July 16, 2025

**A Y A D   L A W ,   P . L . L . C .**
645 Griswold St., Ste. 2302
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

# Exhibit

# A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSA MARIA PENA GARCIA,

             Plaintiff,                      Case No. 2:25-cv-12023

v.                                     Honorable Susan K. DeClercq
                                        United States District Judge

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

             Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S EMERGENCY
MOTION FOR PRELIMINARY INJUNCTION OR STAY OF REMOVAL
(ECF No. 3)**

     Plaintiff Rosa Maria Pena Garcia, a Mexican citizen, has lived in the United States for the past 23 years without incident. But because she entered the country without legal status, she is now facing removal and a ten-year bar from return, meaning she would be separated from her U.S. citizen son and her seriously ill husband. Make no mistake, this Court sympathizes with Pena Garcia's situation. These are difficult facts, especially given that Pena Garcia is only months away from potentially having a path to legal status through her citizen son, and because her husband relies on her care. Unfortunately, however, this Court is powerless to intervene, and so the motion will be denied.

# I. BACKGROUND

In 2019, Pena Garcia applied in Immigration Court for cancellation of removal and adjustment of status, which was denied. *See* ECF No. 1-4 at PageID.37. She appealed that decision to the Board of Immigration Appeals (BIA), and on March 27, 2023, the BIA affirmed the denial but granted her voluntary departure. *Id.* at PageID.37–40. Voluntary departure would have allowed Pena Garcia to leave on her own without the negative consequences of a removal on her record. *Id.* As to the voluntary departure order, the BIA wrote, "[Pena Garcia] is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by DHS." *Id.* at PageID.39. The order then notes that "[i]n the event [Pena Garcia] fails to voluntarily depart the United States, [she] shall be removed as provided in the Immigration Judge's order." *Id.* By its own terms, that order was set to expire on May 26, 2023. *See* ECF No. 1-4.

More than 60 days later, in July 2023, Pena Garcia filed an application for a stay of deportation or removal. ECF No. 1-5 at PageID.41. On August 21, 2023, U.S. Immigration and Customs Enforcement (ICE) granted a stay of removal "for one year." *Id.* In the meantime, Pena Garcia was subject to an order of supervision. *Id.*; *see also* ECF No. 1-6. That order of supervision noted that (1) Pena Garcia was subject to an order of removal as of March 27, 2023; and (2) she was required to

report to her local ICE office on August 22, 2023, one day after the grant of her stay. ECF No. 1-6 at PageID.42. A continuation page to that order of supervision showed that Pena Garcia did report on August 22, 2023, and that her next report date would be September 12, 2024. *Id.* at PageID.43. Then, after Pena Garcia reported in September 2024, her next report date was scheduled for September 12, 2025. *Id.* In the meantime, she had also received employment authorization that would last until November 2025. ECF No. 1-7 at PageID.45.

On May 13, 2025, ICE indicated that it was proceeding with removing Pena Garcia through a series of notices. First, it issued Pena Garcia a notice that it was cancelling her $5,000 immigration bond, which it had held since April 2018, prior to her first request for cancellation of removal. ECF No. 1-8 at PageID.51. Second, ICE also sent her a notice of intention to fine her under the Immigration and Nationality Act in the amount of $3,000 for her failure to voluntarily depart under the March 2023 order. *Id.* at PageID.52. The next day, ICE sent a notice to Pena Garcia that she had breached her bond conditions by not voluntarily departing the country by May 26, 2023, so she owed an additional $500. *Id.* at PageID.53.

Approximately one week later, ICE issued a new order of supervision, requiring Pena Garcia to report in person on May 27, 2025. ECF No. 1-10 at PageID.54. According to the continuation page, Pena Garcia was directed to attend the May 27 appointment prepared to provide ICE with a "travel plan" for her

departure to Mexico. *Id.* at PageID.55. She therefore booked a flight from Detroit to Mexico that is scheduled for July 18, 2025, ECF No. 1-11, and brought her flight itinerary to the appointment, ECF No. 1-10 at PageID.55. ICE set her next report date for July 16, 2025. *Id.*

On July 3, 2025, Pena Garcia filed a Complaint for Declaratory and Injunctive Relief and Petition for Habeas Corpus and Mandamus in this Court. ECF No. 1. As an exhibit, she attached an Application for a Stay of Deportation or Removal that she had filed with ICE on the same day. ECF No. 1-12. Eleven days later, noting her impending removal, Pena Garcia filed an Emergency Motion for Preliminary Injunction, or in the alternative, Motion to Stay Plaintiff's Removal. ECF No. 3. The Government responded to the motion on July 15, 2025. ECF No. 5. To its response the Government also attached a letter from ICE dated July 6, 2025, which denied Pena Garcia's most recent request for a stay of removal. ECF No. 5-1 at PageID.153. This Court held a status conference on Pena Garcia's emergency motion on July 15, 2025. *See* ECF No. 4.

## II. STANDARD OF REVIEW

Preliminary injunctions have "been characterized as one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (internal quotation marks omitted). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her

burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Importantly, a "court may issue a preliminary injunction only on notice to the adverse party." FED. R. CIV. P. 65(a)(1).

"In determining whether to grant a motion for preliminary injunction, the district court must consider and balance the following four factors: (1) the moving party's likelihood of success on the merits; (2) the moving party's likelihood of suffering irreparable injury absent the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) the degree to which the injunction would serve the public interest." *Towerco 2013, LLC v. Berlin Twp. Bd. of Trustees*, No. 23-3768, 2024 WL 3665539, at *4 (6th Cir. Aug. 6, 2024) (citing *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)).

Although district courts must balance these four factors, the movant's failure to establish either of the first two factors—a likelihood of success on the merits or irreparable harm—is usually fatal. *See CLT Logistics v. River West Brands*, 777 F. Supp. 2d 1052, 1064 (E.D. Mich. 2011). In sum, a preliminary injunction should be granted "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.*

### III. ANALYSIS

Here, the balance of the factors weighs in favor of denial because Pena Garcia has not demonstrated a likelihood of success on the merits or irreparable harm. The Court will address all of the factors below, in turn.

### A. Likelihood of Success on the Merits

Pena Garcia alleges that each of the following federal laws and provisions provides an independent basis for an injunction: Fifth Amendment Due Process, the Administrative Procedure Act, the Habeas Act, and the Mandamus Act. However, she is unlikely to succeed under any of these theories, mostly because this Court lacks jurisdiction to review claims relating to an order of removal.

Under Article III of the Constitution, federal courts are courts of limited jurisdiction and may only hear cases of types authorized by Congress. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). In 2005, Congress enacted the REAL ID Act of 2005, 8 U.S.C. § 1252 *et seq.*, which narrowed the scope of judicial review of removal orders in immigration cases. Specifically, 8 U.S.C. § 1252(a)(2)(A) provides that "no court shall have jurisdiction to review" any "claim arising from or relating to the implementation or operation of an order of removal." Rather, the "exclusive means of review" of an order of removal is by petition for review with "an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). Accordingly,

- 6 -

this Court lacks jurisdiction to review any claim relating to the order of removal against Pena Garcia.

But even assuming that her claim relates to an entitlement to voluntary departure rather than to the order of removal, Pena Garcia has not demonstrated that she is currently under a voluntary departure order. Rather, the records provided show that Pena Garcia has had a pending order of removal in place since March 27, 2023. ECF No. 1-4. To be sure, she was granted the opportunity to voluntarily depart at that same time, but that grant was only valid for 60 days—until May 26, 2023. *Id.* When Pena Garcia did not leave the country during that time or seek an extension *of the voluntary departure*, she became subject to the original order of removal. *See id.* Rather than extending her voluntary departure, Pena Garcia applied for, and on July 26, 2023, received, *a stay of removal* for a period of one year. ECF No. 1-5 at PageID.41. That stay delayed Pena Garcia's removal, but her voluntary departure period had already passed, and nothing in the stay indicated that it served as an extension of that period. *See id.* Ultimately, after July 26, 2024, neither the voluntary departure period nor the stay remained in effect. *See* ECF Nos. 1-4; 1-5. Therefore, ICE complied with the law when it began removal proceedings against Pena Garcia in May 2025.

Pena Garcia makes much of the fact that the BIA decision granting voluntary departure included the following language:

- 7 -

> The respondent is permitted to voluntarily depart the United States, without expense to the Government, within 60 days from the date of this order or *any extension* beyond that time as may be granted by DHS.

ECF No. 1-4 at PageID.39 (emphasis added); ECF No. 1-1 at PageID.18. Under her reading, the stay of removal in July 2023 not only stayed her removal but also extended her *voluntary departure* date to July 2024. *See* ECF No. 1-1 at PageID.18. On its own, this argument could have some merit. However, Pena Garcia stretches it even further, arguing that the Department of Homeland Security, through ICE, granted *more* extensions by simply scheduling check-in dates while an order of removal was in place. *See id.* Notably, she did not point to *any* authority that the administrative task of scheduling future ICE check-ins qualified as an "extension" of a grant of voluntary departure or a stay of removal. *See generally* ECF Nos. 1; 3. And this Court is unaware of any statute or case supporting Pena Garcia's theory that the grant of voluntary departure remains in effect under the circumstances.

Absent any legal authority that would suggest Pena Garcia *actually is* entitled to voluntary departure, there is no basis, under any of the statutes or provisions she alleges were violated, for this Court to intervene in her removal. Regardless of whether this Court believes it is good policy to remove Pena Garcia, it appears that ICE has not violated the law in enforcing the original order of removal from March 2023, which still remains in effect. Pena Garcia therefore has not demonstrated likelihood of success on the merits, even if this Court had the authority to intervene.

## B. Irreparable Harm

Irreparable harm is an "indispensable" requirement for an emergency injunction because without it, "there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (emphasis in original). Plaintiffs suffer irreparable harm when their injuries are not fully compensable by money damages, *Overstreet*, 305 F.3d at 578, or when "the nature of the plaintiff's loss would make the damages difficult to calculate," *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).

Pena Garcia has also failed to demonstrate that allowing her removal to proceed will cause irreparable harm. The Supreme Court has held that "it is accordingly plain that the burden of removal alone cannot constitute the requisite irreparable injury." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And even if Pena Garcia has shown that classifying her departure as a removal will carry significant negative consequences in her future path towards legal status, ECF No. 3 at PageID.84–85, it is unclear from the motion whether that harm will be caused by the *removal* or by the *classification*, the latter of which could, in theory, still be challenged after Pena Garcia leaves the country. *See id.* at PageID.78 ("Plaintiff is not asking for this Court to allow her to remain in the United States but is asking for the Court to stop Defendants from unlawfully labelling her departure as a 'removal' as opposed to a 'voluntary departure,' the extreme legal consequences of which are

- 9 -

described below."); *Nken*, 556 U.S. at 435 (noting that individuals who are removed may continue to pursue their claims of relief and if they prevail they can be afforded relief, including "restoration of the immigration status they had upon removal.").

Accordingly, Pena Garcia has failed to demonstrate that the relief she requests—an injunction or stay of removal—is necessary to prevent the harm of the potential mischaracterization of her departure.

### C. Balance of Hardships and Public Interest

As mentioned at the start, the Court is certainly sympathetic to the hardships that allowing Pena Garcia's removal would impose on her, her family, and her community. And it is difficult to understand how it is in the public interest for valuable members of society who contribute to the care and wellbeing of others to be removed. But given the above determinations that Pena Garcia is unlikely to succeed on the merits, and that she has not demonstrated that she would be irreparably harmed without court intervention, the balance of equities and the public interest here are inadequate to overcome the factors in favor of denial.

In short, this Court lacks the jurisdiction to give Pena Garcia the relief she seeks in this motion. And even if there were jurisdiction, she is unlikely to succeed on the merits, and she has failed to demonstrate irreparable harm. Setting aside personal thoughts about the policy decision to remove Pena Garcia, this Court's hands are tied: the motion for an injunction or stay of removal will be denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Emergency Motion for Preliminary Injunction or Stay of Removal, ECF No. 3, is **DENIED**.


*/s/Susan K. DeClercq*

SUSAN K. DeCLERCQ

United States District Judge

Dated: July 16, 2025

AYAD LAW, P.L.L.C.
645 Griswold St., Ste. 2202
DETROIT, MICHIGAN 48226
P: (313) 983-4600 | F: (313) 983-4665

# Exhibit

# B

## AFFIDAVIT OF ROSA MARIA PENA GARCIA

I, Rosa Maria Pena Garcia, hereby depose and state the following under oath:

1. I have personal knowledge of the facts alleged herein.

2. I am competent and able to testify if called to do so.

3. I make this affidavit of my own free will.

4. I can be reached at 734-624-8815.

5. My husband Hugo Aboytes Rodriguez was diagnosed with metastatic prostate cancer.

6. Since his diagnosis I have been his primary caretaker.

7. My caretaking duties include preparing and ensuring he follows his very strict and specific diet as set by his physicians, managing his medications, providing financial support, and providing moral support in his vulnerable state.

8. My husband is on medical deferment from removal.

9. My is unable to leave and accompany me to Mexico because his medical treatment and his doctors are all in the United States.

10. My husband will not get the same level of treatment for his illness in Mexico as he does in the United States.

11. My husband and I are both almost 60 years old. If I am forced to leave, I will not be able to visit my ill husband for 10 years, if we are both alive and well enough to travel at that point.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. (28 U.S. Code § 1746)

Executed on _7/16/25_

_____
Rosa Maria Pena Garcia

# EXHIBIT B